UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 2 1 2025

JUDGE SARA L. ELLIS
U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

DANIEL GONZALEZ-MUNGUIA,
aka "Alejandro Vasquez"

No. 16 CR 561

Judge Sara L. Ellis

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant DANIEL GONZALEZ-MUNGUIA, and his attorney, DARRYL A. GOLDBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The superseding indictment in this case charges defendant with importing into the United States a controlled substance, namely, a quantity of pentobarbital, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) (Counts 1 and 3); and distributing a controlled substance, namely, a quantity of pentobarbital, in violation of Title 21, United States Code, Section 841(a)(1) (Count 2).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 1 of the superseding indictment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count 1 of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about June 17, 2019, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant DANIEL GONZALEZ-MUNGUIA, aka "Alejandro Vasquez," did knowingly and intentionally import into the United States from a place outside the United States, namely, Mexico, a controlled substance, namely, a quantity of pentobarbital, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

Specifically, between approximately 2012 and April 12, 2021, defendant GONZALEZ-MUNGUIA, a resident of Puebla, Mexico, operated an online drug

2

business that sold and distributed bottles of pentobarbital sodium to customers worldwide, many of whom defendant knew purchased the product to commit suicide. Pentobarbital is a Schedule II controlled substance that has been used in the United States for state sponsored executions, among other things. Defendant's customers learned about his drug business from online locations that identified email addresses connected to the defendant as a source of supply for the purchase of the drug pentobarbital. After being contacted, defendant communicated with customers to discuss orders and price using methods designed to conceal his identity, which included among other things a Yahoo! account registered in the alias name "Alejandro Vasquez," several Gmail email accounts, and encrypted email accounts. Defendant accepted payment from customers in the form of bitcoin as well as through international money transfer services, such as Western Union, MoneyGram, and PayPal, and distributed the drug by utilizing international parcel delivery services such as the United States Postal Service, DHL, Fed Ex, United Parcel Service, and Mexico Post.

As part of his distribution business, defendant usually charged customers between $600 to $800 per package, depending on the number of bottles sold, counseled customers to purchase at least two 100 milliliter bottles, and required upfront payment. Overall, defendant sold and exported Pentobarbital using this method over the years and arranged for the distribution of hundreds of bottles of

pentobarbital to hundreds of customers, many of whom consumed the product and died.

After initially shipping bottles directly from Mexico in the manufacturer's packaging, defendant began to conceal the contents of his shipments by removing the manufacturer's label and packaging, affixing a false label that disguised the contents as "natural cosmetics," placing the bottle inside a box disguised to look like a cosmetic product, and including fake invoices and customs forms that falsely declared the contents as a cosmetic product. Defendant also began to use an intermediary in Puebla, Mexico, Individual A, who was paid to transport the bottles to Individual B in the United States, who, in turn, mailed the bottles to customers around the world using the United States Postal Service.

Defendant acknowledges that, on or about June 15, 2019, he contacted Individual A and arranged for him to ship three 100 milliliter bottles of pentobarbital to a resident of Naperville, Illinois, who defendant understood wanted to have the drugs if he decided to commit suicide. After Individual A provided the name and address of the customer to Individual B, Individual B used the United States Postal Service to mail a parcel containing the three bottles, disguised as cosmetic products, to the customer. The customer received the three bottles of pentobarbital on or about June 17, 2019, at an address in Naperville, Illinois. Defendant acknowledges that the liquid inside the bottles received by the customer contained pentobarbital sodium, a scheduled and controlled substance.

4

Between approximately September 2018 and April 2021, Individual B mailed approximately 1,029 parcels from a Los Angeles area post office to defendant's customers in various countries. Each parcel typically contained two 100 milliliters of pentobarbital. Thus, between September 2018 and April 2021, defendant arranged to ship at least 2,058 bottles of pentobarbital using the Postal Service. Among the customers who received pentobarbital during this period was one individual less than 18 years of age who consumed the drug, but survived after being hospitalized.

Further, it is the government's position that, over a nine-year period, using the estimate of 2,058 bottles over a 30-month period, or 69 bottles per month, defendant is responsible for the importation and distribution of at least 7,452 bottles of pentobarbital, each of which contained 100 milliliters of the drug. Therefore, the government's position is that defendant is responsible for at least 1,490,400 units of a Schedule II Depressant.

## Maximum Statutory Penalties

7.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.      Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is set forth below.

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2024 Guidelines Manual.

> b. **Offense Level Calculations**.

> > i. It is the government's position that the base offense level is 30, pursuant to Guideline § 2D1.1(a)(5) and (c) because defendant is responsible for approximately 1,490,400 units of a Schedule II Depressant, which is more than 1,000,000 units, but less than 3,000,000 units. Defendant reserves the right to disagree with the government's position on the applicable base offense level.

> > ii. It is the government's position that, pursuant to § 2D1.1(b)(7), 2 levels are added because defendant used an online service to market narcotics. Defendant disagrees with the application of this enhancement.

> > iii. If the Court determines that defendant has accepted responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate. The government reserves the right to dispute the applicability of this reduction.

> > iv. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 29 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations.

8

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

10.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

### Agreements Relating to Sentencing

11.  Each party is free to recommend whatever sentence it deems appropriate.

12.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

9

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15.    This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 16 CR 561.

16.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

17.    Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

11

reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to

12

trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

18.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

19.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

20.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that

providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

14

23.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

24.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or

may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26.　　Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27.　　Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/21/25

MICHELLE PETERSEN  Digitally signed by MICHELLE PETERSEN
Date: 2025.02.03 12:05:58 -06'00'   for MP

MORRIS PASQUAL
Acting United States Attorney

DANIEL GONZALEZ-MUNGUIA
Defendant

KARTIK K. RAMAN
Assistant U.S. Attorney

DARRYL A. GOLDBERG
Attorney for Defendant

17